UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MEGAN E., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:19-cv-03230-TWP-DLP |
| | ) |
| ANDREW M. SAUL, Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff Megan E.[1] requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "SSA"), denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. For the following reasons, the Court **affirms** the decision of the Commissioner.

## I. PROCEDURAL BACKGROUND

On August 11, 2015, Megan E. protectively filed applications for DIB and SSI, alleging a disability onset date of July 18, 2014.[2] (Filing No. 6-2 at 117.) Her applications were initially denied on May 19, 2015, (Filing No. 6-4 at 2; Filing No. 6-4 at 6), and upon reconsideration on November 18, 2015, (Filing No. 6-4 at 10; Filing No. 6-4 at 14). Administrative Law Judge John Carlton (the "ALJ") conducted a hearing on July 24, 2018, at which Megan E., represented by

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] In her applications, Megan E. alleged that her disability began on January 22, 2014. (Filing No. 6-5 at 2; Filing No. 6-5 at 20.) However, she was involved in motor vehicle accident that occurred on July 18, 2014, which was the initial incident that precipitated her alleged disability. (Filing No. 6-2 at 26.) On appeal, Megan E. concurs that her alleged onset date was July 18, 2014. (Filing No. 8 at 2.)

counsel, and a vocational expert ("VE"), appeared and testified. (Filing No. 6-2 at 18-96.) The ALJ issued a decision on September 10, 2018, concluding that Megan E. was not entitled to receive benefits. (Filing No. 6-2 at 114-30.) The Appeals Council denied review on June 3, 2019. (Filing No. 6-2 at 2.) On August 1, 2019, Megan E. timely filed this civil action, asking the Court pursuant to 42 U.S.C. § 405(g) and to review the final decision of the Commissioner denying her benefits. (Filing No. 1 at 1.) Megan E. also seeks an award of attorney fees pursuant to 28 U.S.C. §2412(d). (Filing No. 1 at 3.) The Court notes that jurisdiction is also proper according to 42 U.S.C. § 1383(c).

## II.   STANDARD OF REVIEW

Under the Social Security Act, a claimant may be entitled to benefits only after she establishes that she is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled despite her medical condition and other factors. 20 C.F.R. § 404.1520(a)(4)(i).[3] At step two, if the claimant does not have a "severe" impairment that also meets the durational requirement, she

---

[3] The Code of Federal Regulations contains separate, parallel sections concerning DIB and SSI, which are identical in most respects. *See, e.g.*, 20 C.F.R. § 416.920(a)(4)(i). The Court will take care to detail any substantive differences that are applicable to the case but will not always reference the parallel section.

is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then her residual functional capacity will be assessed and used for the fourth and fifth steps. *See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v). Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); Social Security Ruling ("SSR") 96-8p). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work, given her RFC and considering her age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if she can perform any other work in the relevant economy. *Id*.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for

the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft*, 539 F.3d at 678, this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

### III. FACTUAL BACKGROUND

When Megan E. filed, she alleged she could no longer work because of short-term memory loss, a "crushed" right leg injury, post-traumatic stress disorder, and difficulty concentrating. (Filing No. 6-6 at 6.) She has completed high school, attended some college, and worked as pharmacy technician.[4] (Filing No. 6-6 at 7.)

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Megan E. was not disabled. (Filing No. 6-2 at 130.)

---

[4] The relevant evidence of record is amply set forth in the parties' briefs, as well as the ALJ's decision and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

4

At step one, the ALJ found that Megan E. had not engaged in substantial gainful activity[5] since July 18, 2014, the alleged onset date. (Filing No. 6-2 at 120.) At step two, the ALJ found that Megan E. had the following "severe impairments: post-motor vehicle accident with traumatic brain injury; post right fibular fracture and right [tibial] plateau fracture, post open reduction and internal fixation ("ORIF"); post C7-T1 transverse process fractures; post left elbow fracture; migraines; depression; anxiety, and PTSD." (Filing No. 6-2 at 120 (citations omitted).) At step three, the ALJ found that Megan E. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Filing No. 6-2 at 121.) After step three but before step four, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she cannot walk on slippery or uneven surfaces. She cannot climb ladders, ropes, or scaffolds, and she can only occasionally climb ramps or stairs, balance, stoop, crouch, crawl, and kneel. She can frequently finger, feel, and handle with her left hand. She cannot work around unprotected heights or dangerous machinery. She cannot operate a motor vehicle as a condition of employment. She cannot reach overhead with the left hand. She is limited to simple, routine work that is not done at a production rate pace.

(Filing No. 6-2 at 123.) At step four, the ALJ found that Megan E. was unable to perform her past relevant work as a pharmacy technician. (Filing No. 6-2 at 128.) At step five, considering Megan E.'s age, education, work experience, and RFC, as well as the VE's testimony, the ALJ concluded that Megan E. could have performed other work through the date of the decision with jobs existing in significant numbers in the national economy in representative occupations, such as a checker, routing clerk, and mail sorter. (Filing No. 6-2 at 128-29.)

---

[5] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

## IV.     DISCUSSION

Megan E. raises a single assignment of error, arguing that the ALJ disregarded, without explanation, the uncontradicted testimony of the VE that there would not be any jobs available in the national economy for an individual with Megan E.'s full limitations.

On January 28, 2018, a little less than six months before Megan E.'s hearing, she slipped on some ice, fell, and sustained injuries to her left elbow including a dislocation of the joint and a fractured radial head.  (*See* Filing No. 6-9 at 66-67.)  As detailed above, the ALJ found Megan E.'s severe impairments to include a history of a left elbow fracture.  The ALJ limited Megan E.'s RFC, in relevant part, to frequent handling, fingering, and feeling with the left hand.

As is typical in social security hearings, the ALJ posed multiple hypothetical questions to the VE describing progressively more restrictive work-related limitations to solicit testimony about their effect on an individual's capacity to perform occupational titles, as well as the availability of corresponding jobs in the national economy.  (Filing No. 6-2 at 81-83; *see, e.g.*, *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010) (use of "series of increasingly restrictive hypotheticals"); *see also Simila v. Astrue*, 573 F.3d 503, 520 (7th Cir. 2009) (describing common practice during hearings).)  The ALJ's second hypothetical question added to the first; together, they described limitations matching the ALJ's ultimate RFC finding.  (*See* Filing No. 6-2 at 81-82.)  The VE's response—that an individual with those limitations would be capable of performing representative occupations—was the basis of the ALJ's step five denial.

Megan E. contends that the ALJ was obligated to discuss the VE's testimony in response to the following hypothetical that an individual who was further limited to occasional handling, fingering, and feeling, would be unable to perform any work.  (*See* Filing No. 6-2 at 82.)  According to the SSA's guidance, "'[o]ccasionally' means occurring from very little up to one-third

6

of the time" during an eight-hour workday. SSR 83-10 (S.S.A. Jan. 1, 1983), 1983 WL 31251, at *5. "'Frequent' means occurring from one-third to two-thirds of the time." *Id*. at *6.

Megan E. does not present any applicable authority for the proposition that an ALJ is obligated to discuss the VE's response to a hypothetical question that does not match the ALJ's ultimate RFC finding. The VE's opinion concerning the availability of qualifying work is conditional, so long as the individual has the limitations described. Because the ALJ did not find that Megan E. was limited to occasional use of her left hand, the VE's opinion such an individual could not work is not applicable to Megan E.'s case. The ALJ had no duty to discuss the inapplicable testimony of the VE. *See Johansen v. Barnhart*, 314 F.3d 283, 288-89 (7th Cir. 2002) (The Seventh Circuit affirmed the ALJ's step five determination even though the ALJ did "not make even a passing reference" to the VE's opinion given in response to a hypothetical that did not match the ALJ's RFC finding.). In such proper context, the ALJ's material conclusion at step five is not inconsistent with the VE's testimony, nor was the ALJ presented with conflicting vocational opinions from competing experts that needed to be weighed.

Megan E. relies on the Seventh Circuit's holding in *O'Connor*:

> An ALJ must explain why he does not credit evidence that would support strongly a claim of disability, or why he concludes that such evidence is outweighed by other evidence. Therefore, the ALJ should explain whether he credits the reviewing psychologist's finding and, if so, should account for this information in the new hypothetical.

627 F.3d at 621 (citing *Giles ex rel. Giles v. Astrue,* 483 F.3d 483, 488 (7th Cir. 2007); *Zurawski v. Halter,* 245 F.3d 881, 888-89 (7th Cir. 2001)). However, the type of evidence that required discussion in *O'Connor* was a reviewing psychologist's assessment that the medical record supported that the claimant would have moderate limitations with accepting instructions and responding to criticism for a supervisor. 627 F.3d at 621. A medical opinion is materially different

than a vocational expert's opinion in response to an inapplicable hypothetical. The psychologist's assessment in *O'Connor* was that the record evidence demonstrated that the claimant had a particular limitation.[6]

On appeal, Megan E. has not developed any basis via citation to the medical record that her left arm injury resulted in a limitation to occasional rather than frequent use of her left hand. The Seventh Circuit has held in a social security disability context that "[p]erfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority." *Krell v. Saul*, 931 F.3d 582, 586 n.1 (7th Cir. 2019) (quoting *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016)).

Megan E. cites to only her own testimony during the hearing describing her ongoing issues with the use of her left hand, as well as the ALJ's observation that Megan E.'s left arm extended at an abnormal angle in towards her other arm. (Filing No. 8 at 13-16 (quoting Filing No. 6-2 at 57-61).)

To a limited extent, Megan E.'s initial brief could be interpreted as implying that the ALJ was obligated to discuss the quoted portion of Megan E.'s testimony. (*See* Filing No. 8 at 12; Filing No. 8 at 16.) In her reply, she argues that the ALJ's failure to do so in the written decision constructively means that he "*sub-silentio*, accepted Megan's description of her limitations and impairments as credible." (Filing No. 14 at 3.)

The ALJ explained that Megan E.'s "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the

---

[6] Even in *O'Connor*, the Seventh Circuit explained that the appellant "claim[ed] that it was incumbent on the ALJ to explain whether and to what extent he considered a social limitation that Ms. O'Connor–Spinner contends wrongly was ignored. We agree that the ALJ should clarify his position on remand, although the omission, standing alone, might not have supported a remand." 627 F.3d at 621. The ALJ had made a more substantial error by not accommodating the moderate limitations in concentration, persistence, or pace—that he expressly credited when assessing the claimant's mental impairments—by adding a corresponding limitation in the RFC finding. *Id.* at 619-21.

intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Filing No. 6-2 at 126.) The ALJ analyzed the record and concluded that it "as a whole [was] inconsistent with the limitations that [Megan E. had] generally alleged." *Id*. Megan E. has not engaged the ALJ's overall credibility determination, much less asserted that it was patently wrong as is necessary for it to be disturbed on appeal. Furthermore, the Seventh Circuit has "never required an ALJ to address every piece of evidence or testimony in the record . . . ." *Zurawski*, 245 F.3d at 889.

Megan E. testified, in relevant part, that she had problems doing specific maneuvers with her non-dominant left hand, including using a knife for cutting, lifting items over five pounds, and gripping and turning a round doorknob. (Filing No. 6-2 at 57-60.) The ALJ followed-up, "So, you talked about opening a door, what about things like tying your shoes or buttoning your shirt, getting dressed, things like that? Are you able to do those things with your left, with your left hand?" (Filing No. 6-2 at 60.) Megan E. responded, "It's getting better. I can do most of it. But there are sometimes where I need my mom's help, like putting on a bra. Because I just can't manipulate my hands and arm very well to coordinate where I can do such things." *Id*.

Even assuming *arguendo* that the ALJ had credited this testimony, the Court does not conclude that the issues Megan E. described necessarily meant that her capability to handle, finger, and feel with her left hand would be limited to the specific frequency during an eight-hour day that she needed to demonstrate to eliminate all work. She established and/or testified that she had a significant injury, was once completely precluded from using her left hand, had struggled to regain functionality, still had issues with very specific hand maneuvers, and was getting better. That does not necessarily demonstrate that she would be unable to perform the specific tasks with the use of

9

her hands that would be required in the occupations that the ALJ found Megan E. could have performed. Her testimony does necessarily establish that she could not use her left hand between one-third and two-thirds of an eight-hour day for handling, fingering, and feeling.

That is really the crux of Megan E.'s appeal. She does not agree with the ALJ's relevant RFC conclusion concerning the use of her left hand. However, she has not developed any basis to support that she was limited to the degree she needed to prove disability. As such, she has waived any challenge to the ALJ's RFC finding.

Moreover, there is no opinion of record that Megan E. would be limited to occasional use of her left hand for handling, fingering, and feeling. The Seventh Circuit has held that "[w]hen no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error." *Dudley v. Berryhill*, 773 F. App'x 838, 843 (7th Cir. 2019) (citing *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004)). Accordingly, there was no error here.

## V.     CONCLUSION

"The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010). For the reasons stated above, the Court finds no legal basis to reverse the ALJ's decision. The final decision of the Commissioner is **AFFIRMED**. Megan E.'s appeal is **DISMISSED**.

    **SO ORDERED.**

Date:  9/1/2020

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

David Porter Murphy
DPMurphy504@outlook.com

Christie O'Brien Tate
SOCIAL SECURITY ADMINISTRATION
christie.tate@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov